```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                        COLUMBUS DIVISION

ANN   ROLAND   and   MARK   ROLAND, *
Individually and as Parents and
Natural  Guardians  of  A.R.,  a *
Minor,
                                    *
     Plaintiffs,                            CASE NO. 4:12-CV-109 (CDL)
                                    *
vs.
                                    *
CHRISTINE   SHREVE   and   THOMAS
BOWERSOX,                           *

     Defendants.                    *
```

O R D E R

The Florida State University Flying High Circus has delighted summer audiences at Callaway Gardens with their exciting trapeze acts and tight wire walks since 1961. But, on June 27, 2010, the excitement extended just outside the big top when a runaway golf cart ran over Plaintiff Ann Roland and her minor son, pinning them against a metal pole of the circus tent. The golf cart had been rented from Callaway Gardens ("Callaway") by Defendants Christine Shreve ("Shreve") and Thomas Bowersox ("Bowersox") who were guests at Callaway and whose family had driven the cart to the circus tent. Although it is undisputed that neither Defendant was operating the golf cart at the time of the collision, it is not clear who was actually driving it. It has been speculated that the culprit was Defendants' minor

grandchild. The identity of the driver is no longer relevant because Plaintiffs have abandoned their negligent supervision claim. The only remaining claim, and the subject of the parties' pending summary judgment motions, arises from Plaintiffs' contention that they are third party beneficiaries to the release and indemnity agreement that Defendants allegedly signed with Callaway when they rented the golf cart.[1] For the reasons that follow, Defendants' motion (ECF No. 17) is granted and Plaintiffs' motion (ECF No. 15) is denied.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*,

---

[1] In their response to Defendants' Motion for Summary Judgment, Plaintiffs attempt to assert a new claim based on the allegation that Defendants were negligent in the manner in which they parked the golf cart next to the circus tent. These factual allegations, however, are not included in Plaintiffs' Complaint, and a plaintiff is not permitted to avoid summary judgment by attempting to amend a complaint in response to a summary judgment motion. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam). Moreover, the Court may not infer all possible claims that could possibly arise from the allegations contained in a complaint. *Id.* The Court finds that a "negligent parking" claim has not been adequately alleged.

477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

## FACTUAL BACKGROUND

The following facts are undisputed for the purposes of summary judgment unless otherwise noted.

Shreve reserved three cottages at Callaway for a family vacation from June 26, 2010 through July 3, 2010.  Shreve Dep. 35:15-23, ECF No. 25.  In conjunction with that reservation, Shreve also reserved two golf carts for use by her family members and for which she and Bowersox were responsible for the charges.  *Id.* at 46:6-25, 73:3-9.  Shreve and Bowersox vacationed with family members Brandy and Justin Kesl and their two minor daughters, Maggie and Michael Ross and their two minor children, and Liza and Michael Bowersox and their three minor children.  *Id.* at 17:14-18:24.

In 2010, Callaway's "standard operating procedure" for golf cart rental included ensuring the responsible party signs a Callaway Release of Liability Form ("Release") at the time of rental.  Sykora Aff. ¶¶ 4-5, ECF No. 15-2.  The Release identifies certain liabilities, rules, and regulations associated with the rental.  Morgan Dep. 27:17-20, 29:9-19, ECF

3

No. 24; Morgan Dep. Ex. 13, Release, ECF No. 24 at 107.  The Release contains the following form language:

> I (we) the undersigned, am (are) using recreational equipment as shown on this form, at my (our) own risk, which I (we) voluntarily assume.  In consideration of the fee paid by me (us), and in full recognition of the risks involved with such equipment, which risks I (we) voluntarily assume.  I (we), the undersigned, hereby release Callaway Gardens Resort, Inc. and The Ida Cason Callaway Foundation$^{TM}$, and their agents, servants, and employees, officers and directors and agree to hold them harmless from any and all liability, claims, damages, actions, and causes of action whatsoever for loss, damage, or injury to person, including death, and whether sustained by myself, my spouse, my parents, my child or children, or property, regardless of how arising, and however caused including but not limited to all kinds and degrees or extent of negligence (except willful or wanton negligence or misconduct) which Callaway Gardens Resort, Inc., The Ida Cason Callaway Foundation, and/or its employees may commit or be charged with, whether consisting of omission or commission, whether separately or concurrently with someone else, and sustained by me, or us, my spouse, my parents, my child or children, in connection, directly or indirectly, with the use of the recreational equipment.  This release shall be binding upon me, my heirs, next of kin, and legal representative.
>
> I further agree that I am personally liable and responsible for paying any claims which may arise as a result of the use of any golf carts, including, but not limited to any claims for personal injury, any claims for property damage to any golf carts or to other property, any claims for loss of any golf carts or loss of use of any golf carts, any claims for diminution in value of any golf carts, any claims for the cost of repairing or replacing any golf carts or any other claims of any kind or nature which may arise from the use of any golf carts while in my possession or in the possession of any other person.  I further authorize Callaway Gardens Resort, Inc. to bill any such charges or costs to my credit card or to my

> account as Callaway Gardens Resort, Inc. deems appropriate.

Release. Callaway's procedure also states that an employee must go over the rules and regulations with the renter. Morgan Dep. Ex. 11, Callaway Gardens Golf Cart Rental Procedures, ECF No. 24 at 105.

Bob Sykora ("Sykora"), a Callaway employee and the director of golf at the time, oversaw golf cart rental in June 2010. Morgan Dep. 24:20-25:2. Specifically, he oversaw the rental of the two golf carts reserved by Shreve. Sykora Aff. ¶ 6.

A Release, containing the same form language as above, for the two golf carts rented to Shreve's cabin includes the cart numbers, three cabin numbers including Shreve's cabin, the initials "RES" of Sykora, the printed name "SHREVE," and an illegible signature. Morgan Dep. Pls.' Ex. 18, Shreve Release, ECF No. 24 at 84. The parties agree that Bowersox's name does not appear on the Shreve Release and that he did not sign the release. The parties dispute whether Sykora or any other Callaway employee explained the terms of the Release to Shreve at any time. The parties also dispute whether Shreve was present when the Release for the golf carts rented in this case was signed, whether Shreve signed the form, and whether it is Shreve's signature on the form. Shreve asserts she did not sign any document regarding rental of the golf carts, the signature

5

on the Release is not her signature and not her handwriting, and she was not present when the Release was executed. Shreve Aff. ¶¶ 3-4, ECF No. 17-2. Shreve also claims that she was not present when the golf carts were delivered to the cabins because they were delivered before she arrived at the cabins. Shreve Dep. 55:6-11. Sykora's recollection, however, provides some evidence that Shreve received the golf carts and executed the Shreve Release. Sykora recalls being notified of Shreve's arrival on June 26, 2010, delivering the golf carts to Shreve's cabin, and meeting a "guest identifying herself as Christine Shreve" who accepted delivery and signed the Shreve Release. Sykora Aff. ¶ 7. Therefore, there is a factual dispute as to whether Shreve signed the release.

On June 27, 2010, the Roland family attended the FSU Flying High Circus at Callaway with their two minor children. Roland Dep. 34:24-35:12, 37:21-38:1, ECF No. 22. Shreve and Bowersox also attended the circus event with their family. Shreve Dep. 94:21-22. Some members of the Shreve and Bowersox families walked to the circus and others rode in golf carts, which they parked outside the tent. *Id.* at 94:25-95:1.[2] When the circus ended, the Rolands, who were seated on the ground, got up to leave and began gathering their belongings. Roland Dep. 46:5-9.

---

[2] Neither party points to any evidence of where the golf carts were parked during the circus event.

6

As the family walked out of the tent, Ms. Roland was holding her minor child A.R. on her right hip. *Id.* at 46:10-16. As she was walking out of the tent, she heard screaming in the crowd. *Id.* at 46:25-47:9. She turned to see what was going on, and then she saw a golf cart coming toward the crowd through the shrubbery. *Id.* at 47:11-13. The crowd parted and she could not find anywhere to go to get out of the path of the golf cart. *Id.* at 47:17-25. She held A.R. as high as she could, turned to her right side, and extended her left arm in an attempt to stop the golf cart. *Id.* at 48:1-7. The golf cart struck Ms. Roland on her left side and pinned her against a metal tent pole with A.R. still in her arms. *Id.* at 48:7-8. She was pinned between the golf cart and the metal pole with her face, left hand, and torso over the plexiglass of the golf cart and she could not move. *Id.* at 48:11-14. Both she and A.R. were doubled over the front of the golf cart. *Id.*

The parties do not dispute that the golf cart that impacted Ms. Roland and A.R. was one of the golf carts rented by Shreve and her family. The parties dispute who was "driving" the golf cart when it hit Ms. Roland and A.R. According to Ms. Roland, the first time Ms. Roland saw the golf cart, she saw a white male with reddish-brown hair in the golf cart. Roland Dep. 56:8-16. When the golf cart hit her, Ms. Roland was "eye-to-eye with the man." *Id.* at 63:4-5. She looked down to see if she

7

could see her legs or the man's legs, and then when she looked back up the golf cart was empty. *Id.* at 63:5-8. The Defendants speculate that their granddaughter, who was four years old at the time, possibly jumped in the parked cart and drove it toward the circus tent, colliding into Ms. Roland. *E.g.*, Bowersox Dep. 23:1-14, ECF No. 23. Ms. Roland does not recall seeing a little girl in the golf cart. Roland Dep. 63:9-13.

The impact of the golf cart caused Ms. Roland and A.R. serious personal injuries. Ms. Roland fractured her femur and underwent surgery. After surgery, she had to undergo physical therapy and she continued to suffer pain. *Id.* at 31:1-32:5, 75:6-82:1.

The Rolands contend that they are third party beneficiaries to the Shreve Release, which they argue contractually makes Defendants liable for their personal injury claims. Shreve and Bowersox maintain that: (1) neither Shreve nor Bowersox executed the Shreve Release; and (2) regardless of whether they signed the Shreve Release, the Rolands do not have standing to enforce the Shreve Release because they are not parties to or intended third party beneficiaries of the Shreve Release.

## DISCUSSION

It is undisputed that Bowersox did not sign the Shreve Release. Therefore, no basis exists for holding him liable. Consequently, he is entitled to summary judgment. A factual

8

dispute clearly exists as to whether Shreve signed the release. Therefore, she cannot escape summary judgment on this basis. The issue regarding her liability is whether the Release obligates her contractually for liability to Plaintiffs.

Under Georgia law, generally an action on a contract "shall be brought in the name of the party in whom the legal interest in the contract is vested, and against the party who made it in person or by agent." O.C.G.A. § 9-2-20(a). Additionally, however, "[t]he beneficiary of a contract *made* between other parties *for his benefit* may maintain an action against the promisor on the contract." O.C.G.A. § 9-2-20(b) (emphasis added). This second category of plaintiff is referred to as a third party beneficiary. "An injured party may recover for personal injuries as a third-party beneficiary for failure to perform a contractual duty only where it is apparent from the language of the agreement that the contracting parties intended to confer a direct benefit upon the plaintiff[.]" *CDP Event Servs., Inc. v. Atcheson*, 289 Ga. App. 183, 184, 656 S.E.2d 537, 539 (2008) (internal quotation marks omitted); *accord Taylor v. AmericasMart Real Estate, LLC*, 287 Ga. App. 555, 558, 651 S.E.2d 754, 757 (2007). The third party beneficiary need not be named in the contract; however, "the contracting parties' intention to benefit the third party must be shown on the face of the contract." *CDP*, 289 Ga. App. at 184, 656 S.E.2d at 539

9

(internal quotation marks omitted). "[T]he fact that performance of the contract *might* benefit [a plaintiff] does not alone establish the requisite intent," and the "mere fact that a third party would benefit incidentally from the performance of the contract is not alone sufficient to give such person standing to sue on the contract." *Id*. In other words, "it must clearly appear that one party to the contract promised another party to the contract to render some performance to the nonparty to the contract. . . . [and] that both parties to the contract intended that the contract benefit the nonparty." *Taylor*, 287 Ga. App. at 557-58, 651 S.E.2d at 757 (internal quotation marks omitted). Therefore, the question "becomes one of whether intention is manifest in the contract that the defendant shall compensate members of the public for injurious consequences arising from its attempts to perform its duties under the contract." *Plantation Pipe Line Co. v. 3-D Excavators, Inc.*, 160 Ga. App. 756, 757, 287 S.E.2d 102, 103 (1981). Thus, even if Shreve executed the Release, if this intent is not shown on the face of the Release, then Shreve is under no duty to the Rolands or any other member of the public and, accordingly, the Rolands acquire no rights as third party beneficiaries and have no standing to enforce the Release. *Id.*, 287 S.E.2d at 103-04.

The construction of contracts is a matter of law for the court at the summary judgment stage. *Amstadter v. Liberty*

*Healthcare Corp.*, 233 Ga. App. 240, 242, 503 S.E.2d 877, 880 (1998). The Court must enforce a contract according to its clear terms when the language is clear and unambiguous. *Gen. Steel, Inc. v. Delta Bldg. Sys., Inc.*, 297 Ga. App. 136, 138, 676 S.E.2d 451, 453 (2009). In construing any part of a contract, the Court must look to the whole contract. O.C.G.A. § 13-2-2(4). Ambiguity may exist where the contract "leave[s] the intent of the parties in question." *Gen. Steel*, 297 Ga. App. at 138, 676 S.E.2d at 453. On the other hand, "no ambiguity exists where, examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is capable of only one reasonable interpretation." *Id.*, 676 S.E.2d at 453-54.

The Rolands contend that *Plantation Pipe Line Co. v. 3-D Excavators, Inc.* supports their contention that they are clearly intended third party beneficiaries under the Release. In that case, plaintiff brought an action for damages to his pipeline that occurred when machinery operated by the defendant struck the pipeline. *Plantation Pipe Line*, 160 Ga. App. at 756, 287 S.E.2d at 103. The plaintiff alleged that it was a third party beneficiary of the contract between the defendant and the county for which it was doing construction and sought recovery under the contractual provision providing that "[a]ny damage to existing structures or utilities shall be repaired or made good

by the Contractor [defendant] at no expense to the Owner [DeKalb County]." *Id.* at 757, 287 S.E.2d at 103 (alterations in original). The Georgia Court of Appeals concluded that plaintiff was a third party beneficiary with standing to sue on the contract because (1) defendant's promise to repair damaged structures was in the nature of compensation (a direct benefit) to the owner of the damaged structure and (2) the plaintiff was a member of a small group of beneficiaries whose utilities were in close proximity to the construction work that it could reasonably be construed they were to be afforded contractual protection under the repair language. *Id.* at 758, 287 S.E.2d at 104-05.

Viewing the Shreve Release as a whole, the Court finds that unlike the contract in *Plantation Pipe Line*, it is not clear from the language of the Release that Shreve or Callaway intended to benefit any third party through Shreve's contractual duty to Callaway. The Release was clearly intended to indemnify and hold harmless Callaway from any expenses and damages arising from Shreve's rental and use of the golf carts. Nothing in the Release clearly indicates that it or any portion of it was intended to benefit the Rolands. It is not evident that the Release's provision that the Rolands rely on, stating that Shreve agreed to be "personally liable and responsible for paying any claims which may arise as a result of the use of any

12

golf carts," included a blanket acceptance of liability and promise to make payments to nonparties for their personal injuries.  Shreve Release.  The Release nowhere references nonparties or anyone other than the golf cart renter, the renter's spouse, the renter's parents, the renter's child or children, or the renter's property.  *Id.*  Without language "reflecting an intent to confer a direct benefit on" a nonparty, the contract does not support a finding that the Rolands were third party beneficiaries of the Release.  *Brown v. All-Tech Inv. Grp., Inc.*, 265 Ga. App. 889, 897, 595 S.E.2d 517, 524 (2003); *see also CDP*, 289 Ga. App. at 185-87, 656 S.E.2d at 539-40 (holding that that the plaintiff was not a third party beneficiary to the agreement at issue because no language in the agreement reflected a clear intent of either party to the agreement to confer a benefit on plaintiff or other nonparties).

Moreover, even if the Release could be reasonably interpreted to include a promised payment generally to an unidentified group of nonparties, the Release does not identify the Rolands or any limited group of beneficiaries that would include the Rolands who would have standing to sue under the Release.  "Non-parties to a contract cannot claim third party beneficiary status if they are members of an unreasonably broad group of beneficiaries."  *Martinez v. Rycars Constr., LLC*, NO. CV410-049, 2011 WL 4625989, at *8 (S.D. Ga. Sept. 30, 2011)

13

(citing *Miree v. United States*, 242 Ga. 126, 135-36, 249 S.E.2d 573, 579-80 (1978)).  The general public or patrons of Callaway, groups which include the Rolands, would constitute "an unreasonably broad group of beneficiaries," *id.*, who "might" benefit or only incidentally benefit from the contract, which is insufficient for third party beneficiary status, *CDP*, 289 Ga. App. at 185, 656 S.E.2d at 539.  This unreasonably large potential beneficiary group is in stark contrast to the small, clearly identifiable beneficiary group in *Plantation Pipe Line*. *See* 160 Ga. App. at 758, 287 S.E.2d at 105 ("[T]he plaintiff is a member of a relatively small group of intended beneficiaries, that is, those individuals whose obstructions and utilities were in such proximity to the construction work to be completed under the contract[.]").

Consistent with the Release, Defendants theoretically could have been liable to Plaintiffs for the incident in question, but that liability would be based on traditional tort principles and not contractual liability under a release that does not even name Plaintiffs or clearly indicate it intended to benefit them. Under the circumstances presented here, the Court finds that Shreve is not liable to Plaintiffs under the Shreve Release. *See CDP*, 289 Ga. App. at 186-87, 656 S.E.2d at 540.  The Court thus grants summary judgment as to this claim.  Since Plaintiffs apparently have been unable to discover evidence supporting a

tort claim, they simply have no legal recourse against these Defendants for their injuries.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment (ECF No. 17) and denies the Plaintiffs' Motion for Partial Summary Judgment (ECF No. 15).

IT IS SO ORDERED, this 8th day of July, 2013.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE
